IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20675
_____


DENNIS CAMPBELL, SR., as next friend of
Dennis Campbell, Jr.; TAMMIE CAMPBELL,
as next friend of Dennis Campbell, Jr.,

                                    Plaintiffs-Appellants,

                    versus

BUTCH McALISTER; THE CITY OF SUGARLAND;
FORT BEND INDEPENDENT SCHOOL DISTRICT,

                                    Defendants-Appellees.
_____

          Appeal from the United States District Court for the
                    Southern District of Texas
                         (H-96-CV-1316)
_____
                      October 20, 1998

Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    The issue in this case is whether a school official's use of
allegedly excessive force to remove a disruptive kindergarten
student from his classroom constitutes an unreasonable seizure
under the Fourth Amendment or a denial of substantive due process
under the Fourteenth Amendment.  In granting summary judgment
against the plaintiff, the district court concluded that the use of
force in this case was properly analyzed under the Fourteenth

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Amendment substantive due process standard and that it was not arbitrary or unrelated to legitimate school interests in violation of that standard. We hold that under either Amendment, the school official's use of force was not a constitutional violation.

I

A

On February 28, 1994, Dennis Campbell, Jr. ("Dennis"), a five-year-old kindergarten student at Dulles Elementary School, was misbehaving in class. Although the parties dispute whether Dennis was "completely out of control" or misbehaving to some lesser extent, the summary judgment evidence clearly demonstrates that his conduct was disruptive. At one point, Dennis refused to obey any more of his teacher's instructions. Feeling that she could no longer control him, the teacher requested the assistance of the assistant principal. Dennis, however, continued to be defiant, refused to stand up or move, and told the assistant principal to "shut up."

The assistant principal then summoned the help of Mr. Oliver McAlister, a Sugarland police officer who had recently been assigned to the Dulles school as part of a nationwide drug prevention program known as "D.A.R.E." Being the only adult male in the building at the time, McAlister was asked if he would remove Dennis from the classroom and escort him to the principal's office. McAlister twice requested that Dennis get up and go with him, but Dennis refused.

2

At this point, the accounts of what happened diverge. The Campbells allege that McAlister "slammed [Dennis] to the floor" and "dragged [him] along the ground to the principal's office." They approximate that the distance to the principal's office was around 200 to 300 feet. Nevertheless, in her deposition, Mrs. Campbell conceded that Dennis did not have any scratches, bleeding, or torn clothing. The doctor who examined Dennis the next morning discovered some bruising under his arm, but no other injury requiring x-rays or follow-up medical treatment. Although school officials describe a more belligerent Dennis and a less forceful McAlister, we will assume the truth of the Campbells' allegations.

B

On January 24, 1996, the plaintiffs-appellants Dennis Campbell Sr. and Tammie Campbell (the "Campbells"), as next friends of Dennis Jr., sued McAlister, the City of Sugarland (the "City"), and the Fort Bend Independent School District (the "FBISD") under 28 U.S.C. § 1983, and the Fourth and Fourteenth Amendments. They alleged that McAlister, while acting under the color of state law, used excessive force to remove Dennis from his classroom and that the City and the FBISD were deliberately indifferent to Dennis's constitutional rights.

The defendants each moved for summary judgment, which the district court granted. In a thorough and well-reasoned opinion, the district court determined that the Campbells failed to establish any factual basis for extending section 1983 liability

3

for McAlister's actions to the City or the FBISD. As to McAlister individually, who claimed qualified immunity, the court examined the merits of whether his conduct violated the Fourth or Fourteenth Amendments. Based on our cases applying a substantive due process standard to corporal punishment in schools, it concluded that the Fourteenth Amendment was the proper mode of analyzing the excessive force allegations in this case, not the Fourth Amendment.[1] Applying a substantive due process analysis, the court pointed out that the State of Texas provided adequate post-deprivation civil and criminal remedies for the mistreatment of students by school officials. Thus, it concluded, the Fourteenth Amendment claim failed as a matter of law.

The Campbells appeal the district court's grant of summary judgment in favor of McAlister, but not the City or the FBISD.[2]

## II

We review a decision to grant summary judgment *de novo*, using the same standard as the district court. Ganther v. Ingle, 75 F.3d 207, 209 (5th Cir. 1996). Summary judgment is proper when there is no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Lavespere v. Niagare

---

[1]The court did note that, even under a Fourth Amendment analysis, McAlister's conduct did not result in a constitutional violation because it was reasonable under the circumstances.

[2]Because the Campbells do not raise any point of error with respect to the resolution of their claims against the City and the FBISD, any claims against those defendants have been waived. See United States v. Musa, 45 F.3d 922, 925 (5th Cir. 1995).

4

Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990). The court will not weigh the evidence or evaluate the credibility of witnesses; further, all justifiable inferences will be made in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

III

The essence of the Campbells's claim in this case is that McAlister used excessive force to remove Dennis from his classroom. The Supreme Court has rejected the "notion that all excessive force claims brought under § 1983 are governed by a single generic standard." Graham v. Conner, 490 U.S. 386, 393 (1989). The proper analysis "begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Id. at 394. Whether the right has been violated "must then be judged by reference to the specific constitutional standard which governs that right." Id.

A

Since our en banc decision in Ingraham v. Wright, 525 F.2d 909 (5th Cir. 1976), aff'd on other grounds, 430 U.S. 651 (1977), we have consistently applied a substantive due process analysis to claims of excessive force in the context of corporal punishment at public schools. See, e.g., Fee v. Herndon, 900 F.2d 804 (5th Cir.), cert. denied, 498 U.S. 908 (1990); Cunningham v. Beavers, 858 F.2d 269 (5th Cir. 1988), cert. denied, 489 U.S. 1067 (1989); Woodard v. Los Fresnos Indep. Sch. Dist., 732 F.2d 1243 (5th Cir.

5

1984); Coleman v. Franklin Parish Sch. Bd., 702 F.2d 74 (5th Cir. 1983) (per curiam).  We have also applied this same analysis in the school context to the right to be free from "state-occasioned damage to a person's bodily integrity," see Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443 (5th Cir.) (en banc) (sexual molestation by a teacher), cert. denied, 513 U.S. 815 (1994), as well as the right to be free from "bodily restraint," see Jefferson v. Yselta Indep. Sch. Dist., 817 F.2d 303 (5th Cir. 1987) (student tied to chair with a jump rope).

The Supreme Court has not yet addressed whether the use of excessive force by public school officials against students implicates a specific constitutional right.  It has, however, applied the Fourth Amendment to cases involving searches at public schools.  See Veronia Sch. Dist. 47J v. Acton, 515 U.S. 646 (1995); New Jersey v. T.L.O., 469 U.S. 325 (1985).  In doing so, the Court has made clear that the scope of the Fourth Amendment is not limited to criminal investigations, but rather, extends generally to searches and seizures by government actors.  See T.L.O., 469 U.S. at 335.

Drawing on these cases, we and other courts have considered claims involving allegedly unreasonable detainment of students under the Fourth Amendment.  See, e.g., Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075 (5th Cir.), cert. denied, 516 U.S. 995 (1995); Wallace v. Batavia Sch. Dist. 101, 68 F.3d 1010 (7th Cir. 1995); Edwards v. Rees, 883 F.2d 882 (10th Cir. 1989).  In Hassan,

school officials detained a sixth grader in a room as punishment for misbehaving on a field trip. The student was locked in the room, which contained a window and was monitored continuously, for 50 minutes until the other students could complete the field trip tour. See 55 F.3d at 1078. Examining the case under both the Fourth and Fourteenth Amendments, we held that the seizure was neither unreasonable nor a violation of substantive due process liberty interests. See id. at 1079-81.

Like the plaintiff in Hassan, the Campbells bring their excessive force claim against McAlister pursuant to both the Fourth Amendment's proscription against unreasonable seizures and the Fourteenth Amendment's guarantee of substantive due process. Because we found no constitutional violation under either standard, we had no occasion to address the question whether, under Graham, analysis of the claim in Hassan should have been confined to the Fourth Amendment alone. Accord P.B. v. Koch, 96 F.3d 1298, 1303 n.4 (9th Cir. 1996) ("Under any standard, Koch's alleged actions were clearly unlawful. Thus, . . . we need not and do not resolve the question of whether the Fourth Amendment, rather than the Due Process Clause, protects a student from the use of excessive force by a school official."). We reach the same conclusion here. The Campbells simply have not alleged conduct rising to the level of an unreasonable seizure or a denial of substantive due process.

B

7

As the text of the Fourth Amendment indicates, "the ultimate measure" of the constitutionality of a governmental search or seizure is "reasonableness."  Veronia, 515 U.S. at 652; see also T.L.O, 469 U.S. at 334.  A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or a sufficient show of authority, restrained an individual's liberty.  See California v. Hodari D., 499 U.S. 621, 626, 628 (1991).  Whether a given seizure meets the reasonableness standard "'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'"  Veronia, 515 U.S. at 652-53 (citations omitted).  This reasonableness inquiry is an objective one: "the question is whether the [government official's] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation."  Graham, 490 U.S. at 397.

In the public school context, the Court has gone to great lengths to emphasize the special circumstances facing school administrators "in maintaining discipline in the classroom and on school grounds."  T.L.O, 469 U.S. at 339; see also Veronia, 515 U.S. at 656 ("Fourth Amendment rights, no less than First and Fourteenth Amendment rights, are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children.").  Given our recent rash of school shootings across the nation, what

8

the Court observed 13 years ago in T.L.O. seems as pertinent today as ever:

> Maintaining order in the classroom has never been easy, but in recent years, school disorder has often taken particularly ugly forms: drug use and violent crime in the schools have become major social problems. . . . Even in schools that have been spared the most severe disciplinary problems, the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult.

469 U.S. at 339. It is against this backdrop that we examine the Campbells's claim that the forcible removal their son Dennis from his classroom amounted to an unreasonable seizure.

Even assuming the full use of force alleged by the Campbells, the coercive nature of McAlister's conduct in removing Dennis from his classroom was not unreasonable under the circumstances. Dennis had refused to leave the room or even to stand up. Repeated requests that he voluntarily do so were met with silence or defiant orders to "shut up." Thus, to dislodge Dennis and maneuver him to the principal's office, some use of force was apparently going to be necessary. Because of his youth, Dennis's allegation that he was "slammed" to the ground causes us concern. But other evidence in the record belies any inference that, if he was thrown to the ground, it was with unreasonable force. Deposition testimony and the medical records of the doctor who examined Dennis make clear that he did not suffer any significant harm as a result of the incident. Minor bruising as a result of school discipline has never been sufficient harm to establish a constitutional injury.

Compare Ingraham, 525 F.2d at 911, 917 (twenty licks with a paddle resulting in "a painful bruise that required the prescription of cold compresses, a laxative, sleeping, and pain-killing pills and ten days of rest at home and that prevented [the child] from sitting comfortably for three weeks" insufficient to establish a constitutional harm).

The fact that less force could have been used, or that a more appropriate punishment may have been available, is not enough to establish that the punishment administered was unconstitutional. See Hassan, 55 F.3d at 1081-82.[3] The Fourth Amendment's reasonableness standard must afford school officials with a relatively wide range acceptable action in dealing with disruptive students. See T.L.O., 469 U.S. at 340 ("maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship"). This approach is "consistent with the Supreme Court's view 'that the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local officials, and not federal judges.'" Wallace, 68 F.3d at 1014 (quoting Hazelwood Sch. Dist. v. Kuhlmeier,484 U.S. 260, 273 (1988)); cf. Ingraham, 525

---

[3]Conduct sufficient to establish an excessive force tort claim will not necessarily be so unreasonable as to establish a viable constitutional claim. Cf. Daniels v. Williams, 474 U.S. 327, 332 (1986) ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.").

F.2d at 917 ("it is not this court's duty to judge the wisdom of particular school regulations governing matters of internal discipline").

McAlister's alleged efforts to subdue Dennis and move him to the principal's office were fairly tailored to Dennis's admitted misbehavior and certainly not so excessive as to be unreasonable under the circumstances. "Events calling for discipline [in public schools] are frequent occurrences and sometimes require immediate, effective action." Goss v. Lopez, 419 U.S. 565, 580 (1975). The situation here reasonably called for immediate action. Because McAlister's conduct was not objectively unreasonable as a matter of law, the district court did not err in concluding that the Campbells failed to establish a Fourth Amendment claim.

C

We turn next to the Campbells's claim that McAlister used excessive force in violation of Dennis's substantive due process rights. Corporal punishment in public schools "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." Woodard, 732 F.2d at 1246). "[I]njuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions." Fee, 900 F.2d at 808; see also

11

Cunningham, 858 F.2d at 272.  If, however, an excessive or abusive use of force is wholly unrelated to legitimate school interests, it is quite likely that no post-deprivation remedy would meet the requirements of due process.  See Doe, 15 F.3d at 451-52; id. at 461 (Higginbotham, J., concurring).

In this case, there is no question that McAlister's use of force to remove Dennis from his classroom were rationally related to legitimate school interests in maintaining order.  As the district court noted, and the Campbells apparently concede, Texas provides civil and criminal post-deprivation remedies for the excessive use of force by school officials.  Thus, the district court correctly concluded that the Campbells's substantive due process claim fails as a matter of law.

IV

For the foregoing reasons, the judgment of the district court is

A F F I R M E D.