Ronald Lee **FEE** and Wife, Nancy Lee Fee, Individually and as Next Friends of Tracy John Fee, a Minor, Plaintiffs–Appellants,

v.

Joseph Milton **HERNDON**, et al., Defendants–Appellees.

No. 89–2828.

United States Court of Appeals, Fifth Circuit.

May 9, 1990.

Gregory B. Enos, Burwell & Enos, Texas City, Tex., for plaintiffs-appellants.

Carla Cotropia, Robert Davee, Galveston, Tex., for Herndon.

Ronnie B. Arnold, Daryl G. Dursum, Coats, Yale, Holm & Lee, Houston, Tex., for Disd, et al.

Before KING, GARWOOD, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

A sixth grade special-education student became disruptive during classroom instruction, prompting the use of corporal punishment by the school's principal to restore discipline. The parents, Ronald and Nancy Fee, maintain that the principal beat their emotionally disturbed child so excessively, however, that the student was forced to remain in psychiatric rehabilitation for months. The parents further allege that they incurred large medical costs as a consequence of the hospitalization.

The plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 against the school district and various educators, averring that the fourteenth amendment's sub-

stantive due process guarantee operates to ban excessive corporal punishment in public schools. Pendent state-law tort claims were attached to this civil rights suit to raise charges of negligence and excessive force. Indisputably, however, state remedies—both criminal and civil—are available in Texas and proscribe the excessive use of corporal punishment against students, including emotionally handicapped children. That being so, our precedents instruct that the substantive component of the due process clause, though selectively applied in other contexts, is inoperative under the facts herein presented.

We adhere to this circuit's rule that no arbitrary state action exists, by definition, where states affirmatively impose reasonable limitations upon corporal punishment and provide adequate criminal or civil remedies for departures from such laws. Accordingly, we conclude that defendants here, all of whom allegedly acted in contravention of Texas's criminal or civil laws, have not implicated federal substantive due process considerations, irrespective of the argued capriciousness of the corporal punishment imposed. Thus, federal constitutional relief is not among the plaintiffs' available remedies, and consequently we affirm.

## I.

Tracy Fee attended special-education classes within the defendant Dickinson Independent School District. The few relevant facts not disputed by the litigants can be reduced succinctly to the following: (1) Tracy attended sixth grade at a public school within the district; (2) he had a documented history of aggressive behavioral problems; (3) he attended special classes for emotionally handicapped children; and (4) he received corporal punishment from the school's principal after his teacher sent him to the principal's office for misbehaving in class. Excluding this narrow area of accord, the facts are dramatically at odds.

School officials downplay the extent of the student's injuries and focus upon his behavioral problems. The Fees, in contrast, portray a brutal beating of their son by the principal, Joseph Herndon, which was witnessed passively by his teacher, Suzanne Lahr. School officials admit that the principal paddled Tracy three times on the buttocks to serve as punishment for his disruptive behavior during a history class, but they insist that the punishment comported with official school policy, which provides for *reasonable* corporal punishment.[1]

The defendants further profess that the use of corporal punishment by school officials was agreed to expressly by the mother through a special-education consent form.[2] Any aggravated mental or physical injury, they maintain, was self-inflicted by Tracy, as he aggressively resisted punishment and thrashed about on the principal's floor. They also reject the assertion that Tracy's teacher, who accompanied her student to the principal's office, witnessed any use of excessive force against Tracy.

The Fees allege that Tracy's injuries first became evident to them shortly after his return from school, where he complained of pain and having been beaten by the principal. They called the sheriff's department, and a police officer took pictures of the welts and scrapes on the child's body. The sheriff's department thereafter investigated the incident, but no criminal action was instituted against any defendant.

---

**1.** The official policy in effect at Dickinson's Dunbar Middle School provides, "Reasonable corporal punishment is permitted in order to preserve an effective educational environment, free from disruption." This general mandate is elaborated upon later in this same policy statement:

Corporal punishment shall be reasonable and moderate and may not be administered maliciously or for the purpose of revenge. Such factors as the size, age, and condition of the student, the type of instrument to be used, the amount of force to be used, and the part of the body to be struck shall be considered before administering any corporal punishment.

**2.** About three weeks prior to this paddling incident, Nancy Fee signed a special-education authorization form providing, among other things, that school officials could administer three paddle swats to Tracy for misbehavior.

The parents assert that their son was hospitalized as a consequence of the beating and forced to spend a total of six months in a psychiatric ward; the total cost of this medical care approached $90,000. Further, Tracy has never fully recovered, we are told, as he has displayed even more pronounced antisocial behavior since the "brutal" beating. The parents admit, however, that Tracy's emotional problems predated this paddling incident.

The Fees filed a section 1983 action against Tracy's principal and teacher, the school district, and Dickinson's superintendent and trustees. The natural persons were sued in their official and individual capacities. Suit was originally commenced in state court and subsequently was removed. The complaint raises allegations of negligence, gross negligence, and excessive force with respect to the principal and teacher. Additionally, all defendants are charged with violating the student's substantive due process rights under the fourteenth amendment.

The defendants unsuccessfully moved for summary judgment at an earlier phase of this litigation. However, the district court warned the plaintiffs at that time that section 1983 does not provide for what the state-court petition terms "responded superior" [sic] liability for the negligent acts of educators. Accordingly, the court granted the Fees an opportunity to amend the complaint so that they could present their "best case." The Fees amended their complaint but not to the district court's satisfaction: The court held that the plaintiffs' "conclusory allegations" once again failed to premise liability upon grounds other than *respondeat superior.*

The defendants renewed their motion for summary judgment, which the district court construed alternatively as a Fed.R. Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. The court disposed of all claims, except the state-law excessive-force charge directed at the principal only. It thereafter declined to exercise pendent jurisdiction over this residual tort dispute and remanded that sole remaining claim.

The Fees appeal, maintaining, first, that the district court should not have dismissed the state-law action against the teacher who passively witnessed the corporal punishment. They also argue that the substantive component of the due process clause proscribes the abusive treatment of students, especially emotionally handicapped students, in public schools and thus affords to them a federal constitutional cause of action here.

## II.

### A.

A section 1983 complaint must state specific facts, not simply legal and constitutional conclusions. *Angel v. City of Fairfield,* 793 F.2d 737, 739 (5th Cir. 1986); *Elliott v. Perez,* 751 F.2d 1472, 1482 (5th Cir.1985). The standard of review to be applied to a dismissal of federal or state claims pursuant to rule 12(b)(6) is the same as that exercised by the trial court: It must appear to a certainty that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Worsham v. City of Pasadena,* 881 F.2d 1336, 1339 (5th Cir.1989); *Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir.1989); *Angel,* 793 F.2d at 739. We may not go outside the pleadings and must accept all well-pleaded facts as true, viewing them most favorably to the plaintiffs. *Partridge v. Two Unknown Officers,* 791 F.2d 1182, 1185–86 (5th Cir.1986); *O'Quinn v. Manuel,* 773 F.2d 605, 608 (5th Cir.1985).

### B.

"Paddling of recalcitrant children has long been an accepted method of promoting good behavior and instilling notions of responsibility and decorum into the mischievous heads of school children." *Ingraham v. Wright,* 525 F.2d 909, 917 (5th Cir.1976) (en banc), *aff'd,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). This common law principle, in fact, predates the American Revolution. *Id.,* 430 U.S. at 661, 97 S.Ct. at 1407. However, coincidently with the genesis of corporal punishment, reasonable limits traditionally have been imposed upon

student discipline so as not to give teachers a license to commit state-sanctioned child abuse. Specifically, post-punishment civil or criminal remedies have targeted public school teachers who departed from the disciplinary norms defined by statute or the common law. *See* Comment, *Corporal Punishment in the Public Schools: The Effect of the Eighth and Fourteenth Amendments*, 29 Baylor L.Rev. 549, 556 n. 61 (1977) (citing nineteenth-century criminal convictions in Texas of educators who abused the use of corporal punishment).

This dispute presents the question of whether the federal Constitution independently shields public school students from excessive discipline, irrespective of state-law safeguards. In *Ingraham*, the Supreme Court declared that twenty swats to a student, which removed him from school for days with bruises and disabled his arm for a week, did not violate *procedural* due process guarantees. 430 U.S. at 682, 97 S.Ct. at 1418. That is, while "corporal punishment in public schools implicates a constitutionally protected liberty interest," *id.* at 672, 97 S.Ct. at 1413, the state may impose sufficient post-punishment safeguards to satisfy procedural due process concerns, *id.* at 682, 97 S.Ct. at 1418. Unfortunately, the *Ingraham* Court declined to address whether teacher discipline can be so capricious as to violate the amorphous substantive due process guarantees inherent in the fourteenth amendment. *Id.* at 659 n. 12, 97 S.Ct. at 1406 n. 12.

■ We have stated that corporal punishment in public schools "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Woodard v. Los Fresnos Ind. School Dist.*, 732 F.2d 1243, 1246 (5th Cir.1984). Thus, *reasonable* corporal punishment is not at odds

with the fourteenth amendment and does not constitute arbitrary state action. Consistently with this caselaw, Texas has authorized educators to impose a *reasonable* measure of corporal punishment upon students when necessary to maintain school discipline,[3] and the state affords students post-punishment criminal or civil remedies if teachers are unfaithful to this obligation.[4]

■ Our precedents dictate that injuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause *if* the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions. The rationale for this rule, quite simply, is that such states have provided all the process constitutionally due. Specifically, states that affirmatively proscribe and remedy mistreatment of students by educators do not, by definition, act "arbitrarily," a necessary predicate for substantive due process relief. That is to say, the Constitution is not a criminal or civil code to be invoked invariably for the crimes or torts of state educators who act in contravention of the very laws designed to thwart abusive disciplinarians.

In *Cunningham v. Beavers*, 858 F.2d 269 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1343, 103 L.Ed.2d 812 (1989), a six-year-old kindergarten student received a total of five paddle swats, causing severe bruising on her buttocks. The child missed six days of school, and her injuries were deemed to be abusive by social welfare workers and her doctor. We held that no deprivation of substantive due process had occurred, because Texas provides adequate state criminal and tort remedies for any excessive punishment that

---

**3.** *See* Tex.Penal Code Ann. § 9.62 (Vernon 1974) (use of force, but not deadly force, justified in educator-student context); Tex.Educ.Code Ann. § 21.912(b) (Vernon 1987) (qualified immunity for educators imposing corporal punishment upon students).

**4.** If the measure of force applied to a student becomes excessive, common law tort remedies

are available for damages. *See Barr v. Bernhard*, 562 S.W.2d 844 (Tex.1978); *Hogenson v. Williams*, 542 S.W.2d 456 (Tex.Civ.App.—Texarkana 1976, no writ). Texas also proscribes excessive corporal punishment with its criminal code. *See* Tex.Penal Code Ann. §§ 22.01, 22.04 (Vernon 1989 & Supp.1990) (injuries to children).

may have been imposed upon the student. *Id.* at 272. *Cunningham,* we conclude, is dispositive here.[5]

■ In this case, the student's mother authorized the use of corporal punishment against Tracy to cure his disruptive classroom behavior.[6] The litigants agree that the principal and the teacher attempted to discipline the child for his in-class disruptions and that official school policy tolerates only reasonable corporal punishment. Although the injuries are alleged to have been severe, the student's substantive due process guarantees have not been violated under the rationale of *Cunningham,* as Texas does not allow teachers to abuse students with impunity and provides civil and criminal relief against educators who breach statutory and common law standards of conduct. Although the sheriff's department investigated the charges raised, no criminal prosecution commenced here; however, the possibility of state-law civil relief remains.

This circuit has consistently avoided any inquiry into whether five, ten, or twenty swats invokes the fourteenth amendment:

> We think it a misuse of our judicial power to determine, for example, whether a teacher has acted arbitrarily in paddling a particular child for certain behavior or whether in a particular instance of misconduct five licks would have been a more appropriate punishment than ten licks. We note again the possibility of a civil or criminal action in state court against a teacher who has excessively punished a child.

*Ingraham,* 525 F.2d at 917. Thus, we have avoided having student discipline, a matter of public policy, shaped by the individual predilections of federal jurists rather than by state lawmakers and local officials. We find no constitutional warrant to usurp classroom discipline where states, like Texas, have taken affirmative steps to protect their students from overzealous disciplinarians.

The plaintiffs claim, however, that the viability of a section 1983 suit should not depend upon the adequacy of state remedies available against educators and, secondly, they assert that prisoners within this circuit enjoy more constitutional protection than that afforded innocent school children. The Fees admonish this circuit for adhering to an "overly rigid" rule, one that allegedly does not contemplate egregious cases of student discipline, such as physical disfigurement or, as here, severe emotional injury. They underscore their displeasure with *Cunningham* and other precedent by suggesting that teachers could mutilate or torture students in the pursuit of discipline without federal constitutional relief.

We reject these emotionally charged criticisms as misplaced. The plaintiffs do not, and in fact cannot, claim that they lack adequate post-punishment remedies at the state level, under the facts as alleged in this case. The fact that they perceive federal damage recovery to be potentially more generous (Title 42 U.S.C. § 1988 authorizes prevailing parties to secure attorneys' fees from constitutional violators.) is irrelevant to our inquiry and does not make state relief inadequate.

It is an overstatement to suggest that students can suffer extreme injury at the hands of educators without recourse. Admittedly, under *Cunningham* their choice of forum may be restricted to state courts. However, it is important to note that the *Cunningham* rule has been crafted to operate in the narrow context of student discipline administered within the public schools of states that authorize only reasonable discipline and, further, provide post-punishment relief for departures from its law. The inquiry, predictably, would differ in states that authorize neither.

The cases relied upon by the Fees to underscore our alleged inflated and incon-

---

5. *See also Woodard,* 732 F.2d 1243 (three spanks to student, despite instruction from parent to teachers *not* to administer corporal punishment, does not violate substantive due process).

6. We note, however, that parental consent to corporal punishment is not constitutionally required. *Ingraham,* 430 U.S. at 662 n. 22, 97 S.Ct. at 1408 n. 22 (citing *Baker v. Owen,* 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)).

sistent concern for prisoners are also distinguishable. These cases implicate constitutional provisions other than the fourteenth amendment, principally the fourth amendment's unreasonable-search-and-seizure provision or the eighth amendment's cruel-and-unusual-punishment clause. However, the *Ingraham* Court has expressly rejected the application of the eighth amendment to student punishment, 430 U.S. at 664, 97 S.Ct. at 1408–09, and the paddling of recalcitrant students does not constitute a fourth amendment search or seizure. None of these prisoner cases is premised upon the substantive protections afforded by the fourteenth amendment's due process clause.

The Fees' argument that their federal civil rights claim is independent in and of itself and should be decoupled from any state-law inquiry also misconstrues settled constitutional principles. Federal constitutional claims regularly turn upon state law: State law, for example, defines who shall be deemed a "final policymaker" for purposes of a section 1983 action,[7] and it defines "property" worthy of compensation under the fifth amendment's taking clause.[8] Further, the doctrine of substantive due process focuses expressly upon the *arbitrariness of state action.* Thus, to dismiss the law of the forum state as irrelevant, as the Fees would have us do, is to misapply that doctrine.

We harbor no opinion as to the severity of the student's injuries in this case. We hold only that since Texas has civil and criminal laws in place to proscribe educators from abusing their charges, and further provides adequate post-punishment relief in favor of students, no substantive due process concerns are implicated because no arbitrary state action exists. Accordingly, we affirm the dismissal of the section 1983 claims asserted against all defendants.[9]

## C.

The Fees maintain that Lahr had a legal duty under state law to intervene in the paddling of their son and that her failure to do so constitutes actionable negligence. Curiously, they rely upon Tex. Educ.Code Ann. § 21.912(b) (duties and liability of professional employees) for the proposition that the district court erroneously dismissed the tort action against the teacher. Section 21.912(b) states, however, that

[n]o professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, *except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in*

7. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 124–25, 108 S.Ct. 915, 924–25, 99 L.Ed.2d 107 (1988).

8. *See, e.g., Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 518–19, 107 S.Ct. 1232, 1259–60, 94 L.Ed.2d 472 (1987) (Rehnquist, C.J., dissenting) ("we have evaluated takings claims by reference to the units of property defined by state law"); *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1003, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) ("That intangible property rights protected by state law are deserving of the protection of the Taking Clause has long been implicit in the thinking of this Court.").

9. The Fees argue in the alternative that a strict application of *Cunningham* would not bar a § 1983 suit against the school district, supervisor, and trustees, since no post-punishment relief is available against them under state law. Assuming, without deciding, this to be true, the Fees still fail to state facts demonstrating that

these government defendants fostered an official policy or custom to batter children, as required by § 1983.

No official state or school policy is offered, for example, to show that excessive punishment is permitted by teachers, nor do the plaintiffs state any facts to suggest that excessive punishment occurred within the school district as a matter of well-established custom. In fact, no other beating incidents are specifically pled or identified within the school district. Thus, no constitutionally-proscribed conduct on the part of the higher-ranking officials has been demonstrated. Further, the district court properly concluded that the Fees cannot maintain *respondeat superior* liability, as argued here, against the district for the negligent acts, if any, committed by the principal. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

*bodily injury to students.* [Emphasis added.]

This statutory language defines the partial immunity enjoyed by Texas public school teachers; significantly, it does not create any duty on the part of teachers to intervene in the administration of corporal punishment by fellow educators. Further, no Texas court has yet crafted such a duty.

Nevertheless, the Fees maintain that the Texas Supreme Court has construed section 21.912(b) in such a fashion that a cause of action against the classroom teacher exists here. In *Barr v. Bernhard,* 562 S.W.2d 844 (Tex.1978), a student was injured on a school-sponsored farm when a calf dislodged a roof-support, leading to the partial collapse of the roof and the student's injuries. The plaintiffs in that case tried to pierce section 21.912(b)'s partial immunity by suggesting that the statute exempts *all negligence* resulting in bodily injury to students.

The *Barr* court rejected such a broad interpretation, holding instead that immunity under state law terminates in instances where a teacher *acts negligently in disciplining students* and as a result, causes bodily injury. *Id.* at 849; *accord Hopkins v. Spring Ind. School Dist.,* 736 S.W.2d 617, 618–19 (Tex.1987). In *Barr,* the student's injuries were not incurred as a consequence of discipline, and thus no tort recovery was available against school officials or the district.

*Lahr* does not contest the plaintiffs' interpretation of *Barr* and section 21.912(b); she does, however, object vigorously to the suggestion that such authority imposes a duty upon her to intervene in the corporal punishment administered by fellow educators. *Lahr* submits that her activities were limited to directing Tracy to the principal's office for misbehaving and recommending corporal punishment pursuant to the parental consent form.

It is undisputed that Lahr did not engage in the paddling of the student. Accordingly, her liability, if warranted at all, flows from a duty to intervene in the disciplinary activities of fellow educators if and when the punishment became "excessive." No such duty to intervene, however, exists under Texas law, and we decline the invitation to impose new duties under the state's tort law.

We conclude that the Fees have failed to state an actionable negligence claim against the teacher under existing Texas law; thus, only an excessive-force cause of action with respect to the school's principal remains. As all federal claims fail, and a single pendent state claim remains, the district court properly exercised its discretion when it remanded the residual tort action to state court. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988) (where only pendent state claims remain, remand is discretionary). As the district court noted, the plaintiffs are free to renew their theory of negligence in that forum. We express no view as to the merits of that claim.

AFFIRMED.