# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 30, 2023

Lyle W. Cayce
Clerk

—————————

No. 22-30139

—————————

S.B., *on behalf of her minor daughter*, S.B.,

*Plaintiff—Appellant*,

*versus*

Jefferson Parish School Board; Christi Rome; Janine Rowell; Lesley Nick,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-217

———————————————————————

Before Jolly, Haynes, and Graves, *Circuit Judges*.

Per Curiam:[*]

This is a civil rights action in which S.B., an eleven-year-old girl with autism, alleges disability discrimination and violations of her constitutional rights against Jefferson Parish School Board ("JPSB"), Schneckenburger Elementary School, Principal Christi Rome, her teacher Janine Rowell, and paraprofessional Lesley Nick after suffering disciplinary corporal punishment. S.B. appeals the district court's: (A) dismissal of her disparate

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30139

treatment discrimination claims under § 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA"); (B) dismissal of her claims under 42 U.S.C. § 1983 for violations of her substantive due process and equal protection rights; and (C) conclusion that her failure to properly exhaust her administrative remedies under the Individuals with Disabilities Education Act ("IDEA") barred her reasonable accommodation claims under the Rehabilitation Act and the ADA. For the reasons set forth below, we AFFIRM.

## I.

S.B. attended Walter Schneckenburger Elementary School, a public school in Kenner, Louisiana, operated by JPSB. Because of her autism, S.B. occasionally exhibits inappropriate conduct, such as pinching and kicking. She is taught by a special education teacher and is shadowed at school by a "special needs paraprofessional" or "SNP."

S.B.'s lawsuit stems from two incidents. The first occurred on February 7, 2020, during a therapy session with a behavioral technician in Janine Rowell's class. During the session, S.B. refused to clean up puzzle pieces and kicked at the technician when she tried to help. Rowell then slapped S.B.'s wrists and scolded her for kicking, stating "No, ma'am! No kicking!"

The behavioral technician reported the incident to the principal, Christi Rome, who later obtained signed statements from two SNPs who were in the classroom.[1] S.B. alleges that Rowell was not formally reprimanded for the incident but instead transferred to another school.

_____

[1] One said she witnessed Rowell grab S.B.'s wrists but did not witness any slapping. The other SNP said she witnessed Rowell slapping S.B.'s wrists. This SNP also stated that she had witnessed Rowell slapping S.B.'s wrists in this same manner two weeks prior.

No. 22-30139

The second incident occurred approximately nine months later. S.B. was working with her behavioral technician on spelling, and SNP Lesley Nick was assisting S.B. At some point during the session, S.B. reached out and pinched Nick's neck. In response, Nick grabbed S.B.'s hand and slapped the top of it, saying, "We do not pinch our friends!" According to S.B., the special education teacher assigned to the classroom that day immediately reported the incident to Rome. JPSB did not reprimand Nick but instead transferred her to another school.

On February 3, 2021, S.B., through her mother, sued JPSB, Walter Schneckenburger Elementary School, Rome, Rowell, and Nick (collectively the "Defendants"). S.B. alleges claims under 42 U.S.C. § 1983 against all of the Defendants for violations of her substantive due process and equal protection rights. Additionally, she asserts claims under 42 U.S.C. § 1983 against JPSB and Rome for failure to train. S.B. further alleges disparate treatment discrimination claims under the Rehabilitation Act and Title II of the ADA. Lastly, she alleges state law claims of battery, negligence, and violations of Louisiana's state disability discrimination laws.

Defendants moved to dismiss the Complaint, arguing that S.B. failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted these motions, concluding that the Complaint failed to state a claim under federal law and declined to exercise supplemental jurisdiction over the state-law claims. Relevant here, the district court concluded that S.B. failed to state a substantive due process claim because "Louisiana provides adequate post-punishment remedies for this type of harm."

The district court also dismissed her discrimination claims, finding that S.B. had not pleaded any specific facts that permit an inference that any of the Defendants were motivated by her disability, nor did she plead that

another child, either non-disabled or with a different disability, had also misbehaved and that Nick or Rowell did not discipline them.

In an attempt to cure these defects, S.B. moved to amend her complaint. The proposed Second Amended Complaint alleges that "Nick and Rowell have supervised other students without disabilities or with different disabilities who were acting inappropriately or violently" but "did not slap any of those students." Additionally, S.B. has introduced a new argument, contending that the Defendants did not make reasonable accommodations for her disability as required by the Rehabilitation Act and the ADA.

The district court referred the motion to a magistrate judge. The magistrate judge recommended that the district court deny the motion to amend as futile. With respect to S.B.'s reasonable-accommodation claims, the magistrate judge did not consider their plausibility because she concluded that S.B. needed to administratively exhaust them under the IDEA since these claims were a challenge to S.B.'s right to a free and appropriate public education ("FAPE").

S.B. raised objections to the magistrate's recommendation, claiming that the exhaustion defense was not a jurisdictional matter and that JPSB had waived the defense. S.B. did not prevail on any of these arguments, and the district court entered a final judgment. S.B. now appeals.

## II.

This court reviews a district court's dismissal of a complaint de novo. *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). It must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 304–05 (5th Cir. 2015) (quoting *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 146 (5th Cir. 2010)). But it need not accept as true a legal conclusion unsupported by fact.

No. 22-30139

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citations omitted) (internal quotations omitted).

Generally, we review the denial of a motion to amend for abuse of discretion. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 347 (5th Cir. 2008). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 672 (5th Cir. 2013)). However, when as here, the district court denies leave based solely on futility, this court applies a de novo standard of review "identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6)." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).

III.

A.

First, S.B. argues that the district court erred in dismissing her § 504 and ADA claims. We disagree.

The Rehabilitation Act and the ADA both prohibit discrimination against qualified individuals with disabilities; they employ many of the same legal standards and offer the same remedies. *See Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). While § 504 of the Rehabilitation Act applies to federally funded programs and activities, Title II of the ADA only applies to public entities. *Id.* "The only material difference between the two provisions lies in their respective causation requirements." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citation omitted).

Section 504 prohibits discrimination "solely by reason of" a person's disability, whereas Title II of the ADA provides that "discrimination need not be the sole reason" for the adverse action or exclusion but rather "a motivating factor." *Pinkerton v. Spellings*, 529 F.3d 513, 516–19 (5th Cir. 2008). Both the ADA and § 504 require the plaintiff to establish that: (1) she is a qualified individual with a disability within the meaning of § 504 or the ADA; (2) she was excluded from participation in, or was denied benefits of, services, programs, or activities for which the school district is responsible; (3) her exclusion, denial of benefits, or discrimination was by reason of her disability; and (4) the exclusion, denial of benefits, or discrimination was intentional. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). At this stage, S.B. must plead facts making it "plausible that [s]he was discriminated against 'because of'"—but not necessarily *solely* because of— her disability. *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 601 (5th Cir. 2021) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019)).

S.B. argues that the district court erred in dismissing her claims because it improperly applied a summary-judgment standard at the motion to dismiss stage. Specifically, she argues that it's not necessary that she identify in her complaint other students with similar disabilities or different disabilities who were treated more favorably. Instead, she argues that she only needs to show that she was treated less favorably because of her disability.

Not so. To be sure, we have held that a plaintiff need not allege a comparator at the pleading stage in order to advance her discrimination claims under the ADA and § 504. *See Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022). However, the district court's decision did not hinge on this premise. Instead, the district court specifically found that S.B. had not pleaded any specific facts that would suggest any of the Defendants were motivated by her disability. After reviewing the briefs

and relevant portions of the record, we agree with the district court that S.B.'s Complaint is insufficient to support a claim of discrimination. It consists of two separate incidents in which S.B. behaved violently toward her instructors, who in turn resorted to physical discipline. We have dismissed comparable allegations.

In *T.O. v. Fort Bend Indep. Sch. Dist.*, we affirmed the dismissal of the plaintiffs' ADA and § 504 claims after a teacher grabbed a disabled student trying to re-enter a classroom by the neck, threw him to the floor, and held him in a chokehold for several minutes. 2 F.4th 407, 412–18 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2811 (2022), *reh'g denied*, 143 S. Ct. 60 (2022). During the incident, the teacher yelled at the student that he "had hit the wrong one" and "needed to keep his hands to himself." *Id.* at 412. The plaintiffs alleged that the teacher intervened because she was "angered by T.O.'s disabilities and that he was being treated in compliance with his Behavioral Intervention Plan" and that she was "motivated by . . . prejudicial animus to his disabilities." *Id.* at 418 n.44. However, we disagreed, noting that the amended complaint lacked any factual allegations that permit the inference that the defendants' actions were "'by reason of his disability'—an essential element of a discrimination claim." *Id.* at 418.

This case is no different from *T.O.* Although S.B.'s autism was the root cause of her classroom outbursts, it cannot be inferred that Rowell's and Nick's reactions were influenced by her disability. Rather, these claims suggest that S.B. wasn't disciplined due to her disability but to address her disruptive conduct in class. Therefore, punishing S.B. for her disruptive behavior is not the same as treating her differently due to her disability. Consequently, we affirm.

## B.

Next, S.B. challenges the dismissal of her claims under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of

a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). S.B. claims that: (1) the Defendants discriminated against her on account of her disability in violation of the Equal Protection Clause of the Fourteenth Amendment; (2) the Defendants violated her right to be free from state-sanctioned harm to her bodily integrity in violation of the Due Process Clause of the Fourteenth Amendment; and (3) JPSB and Rome failed to train Schneckenburger Elementary staff on how to handle these incidents. We address each in turn.

## 1. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated people alike. U.S. Const. Amend. XIV; *City of Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 439 (1985) (citations omitted). A plaintiff may bring a cause of action for violation of his right to equal protection under § 1983. *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). Here, to succeed on a "class of one" theory, S.B. "must establish (1) [she was] intentionally treated differently from others similarly situated and (2) there was no rational basis for any such difference." *Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) (internal quotation marks omitted).

S.B.'s equal protection claim fails for similar reasons as her ADA and § 504 claims. The facts that S.B. alleges simply do not support an inference that she was treated differently because of her disability. Therefore, the Complaint fails to state a claim, and we affirm the district court's holding that it fails.

## 2. Substantive Due Process

Corporal punishment in public schools constitutes a deprivation of substantive due process "when it is arbitrary, capricious, or wholly unrelated

No. 22-30139

to the legitimate state goal of maintaining an atmosphere conducive to learning." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 875 (5th Cir. 2000) (quoting *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990)). However, we have repeatedly held that "as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment." *T.O.*, 2 F.4th at 414 (citation omitted); *see also Fee*, 900 F.2d at 808 ("Specifically, states that affirmatively proscribe and remedy mistreatment of students by educators do not, by definition, act 'arbitrarily,' a necessary predicate for substantive due process relief.").

Under this line of cases, our court has "dismissed substantive due process claims (1) when a student was instructed to perform excessive physical exercise as a punishment for talking to a friend; (2) when a police officer slammed a student to the ground and dragged him along the floor after the student disrupted class; (3) when a teacher threatened a student, threw him against a wall, and choked him after the student questioned the teacher's directive; (4) when an aide grabbed, shoved, and kicked a disabled student for sliding a compact disc across a table; and (5) when a principal hit a student with a wooden paddle for skipping class." *T.O.*, 2 F.4th at 414 (collecting cases).

S.B. attempts to side-step these cases by arguing that Louisiana law explicitly prohibits the use of corporal punishment on children diagnosed with autism.[2] Consequently, she posits that her claim stands apart from the rest, because the State has made it clear that striking children with autism serves no legitimate educational goal. However, this argument is unavailing.

---

[2] Louisiana law provides that "no form of corporal punishment shall be administered to a student with an exceptionality," which includes "slapping." LA. REV. STAT. § 17:416.1(B)(2). Louisiana law further defines autism as an "exceptionality." *See* § 17:1942(B).

Under our precedent, the State is only required to demonstrate that there is a system in place that allows for reasonable disciplinary measures and offers avenues for recourse after punishment has been administered. *Fee*, 900 F.2d at 809 (concluding that the relevant inquiry is whether the State "authorize[s] only reasonable discipline" and "provide[s] post-punishment relief" from the departures of its laws). Having already found that Louisiana proscribes and remedies mistreatment of students by educators, *see Coleman v. Franklin Parish School Bd.*, 702 F.2d 74, 76 (5th Cir. 1983), we must also find that as a matter of law, the act of slapping S.B. on the hand or wrist did not infringe upon her substantive due process rights.[3]

Other courts have scrutinized these decisions. *See, e.g.*, *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1075 n.2 (11th Cir. 2000); *P.B. v. Koch*, 96 F.3d 1298, 1302 (9th Cir. 1996). Members of this court have also raised concerns. *See T.O.*, 2 F.4th at 419 (Wiener & Costa, JJ., concurring); *Moore*, 233 F.3d at 877 (Wiener, J., concurring); *Ingraham v. Wright*, 525 F.2d 909, 924 (5th Cir. 1976) (Rives, J., dissenting) (en banc). But despite the criticism, these decisions have yet to be overturned and they remain binding in our circuit. Because we are bound by our precedent, we must affirm.

### 3. Failure to Train or Supervise

S.B.'s final theory of recovery under § 1983 rests on an allegation that JPSB and Rome failed to train or properly supervise Schneckenburger Elementary personnel. To make out this claim, S.B. must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing a violation of the plaintiff's

---

[3] S.B. also contends that the Supreme Court has established that a plaintiff can utilize § 1983 without regard to any state-tort remedy that may exist. However, as S.B. acknowledges, this argument is explicitly foreclosed by our caselaw. *See Cunningham v. Beavers*, 858 F.2d 269, 272 (5th Cir. 1988).

rights; and (3) the municipality was deliberately indifferent in adopting its training policy. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010).

Because our precedent operates as a bar to all claims against the Defendants, there is no underlying constitutional violation. Without a constitutional violation, there can be no liability under § 1983 for failure to train. *See Shields v. Twiss*, 389 F.3d 142, 151 (5th Cir. 2004). Therefore, this claim was properly dismissed.

## C.

S.B. lastly contends that the district court erred by denying her leave to amend her complaint. She argues that the exhaustion requirement under the IDEA is simply a procedural rule and that any objections related to it were waived. Additionally, S.B. argues that the failure-to-accommodate claims are not FAPE challenges that require exhaustion.

The issue of whether exhaustion under the IDEA constitutes a jurisdictional prerequisite has yet to be conclusively determined by our circuit. *Logan v. Morris Jeff Cmty. Sch.*, No. 21-30258, 2021 WL 4451980, at *2 (5th Cir. Sept. 28, 2021) (per curiam) (explaining that "we have not yet decided whether a failure to exhaust under IDEA deprives courts of subject matter jurisdiction or is instead a claim-processing requirement which could be forfeited by the party seeking to assert it"); *T. B. ex rel. Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1051 n.2 (5th Cir. 2020) ("This circuit has not yet determined whether exhaustion under the IDEA is a jurisdictional requirement."); *Gardner v. Sch. Bd. Caddo Par.*, 958 F.2d 108, 112 (5th Cir. 1992) ("We do not decide whether exhaustion is a jurisdictional requirement.").

No. 22-30139

Here, however, this issue is inconsequential. Contrary to S.B.'s assertions,[4] JPSB promptly raised its exhaustion argument. The district court evaluated the failure-to-exhaust argument solely as a jurisdictional claim and dismissed it accordingly. Thus, "we need not take sides in this dispute," because the result would be the same whether we consider exhaustion to be a claim-processing rule or a jurisdictional mandate. *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006).

We thus consider whether the district court erred in finding that the failure-to-accommodate claims that S.B. seeks leave to add must be administratively exhausted. It did not.

Under the IDEA, "before the filing of a civil action under [federal law] seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(*l*). If the gravamen of a complaint brought under federal law is the denial of a FAPE, administrative exhaustion is required. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017). To answer this question, we must address two additional questions. *See Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 257 (5th Cir. 2017). "First, could the plaintiff have brought the same claim if the alleged conduct had occurred at a public facility that was

_____

[4] S.B. argues that JPSB waived its exhaustion defense by failing to plead the defense in its first responsive pleading. However, as we have previously held, "an affirmative defense is not waived if the defendant 'raised the issue at a pragmatically sufficient time and [the plaintiff] was not prejudiced in its ability to respond.'" *Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 856 (5th Cir. 1983)). That is what we have here. In this case, JPSB raised a timely exhaustion defense in its Motion to Dismiss the First Amended Complaint. Additionally, there is no indication that S.B. has been negatively impacted by JPSB's initial failure to include this affirmative defense in its response. As a result, S.B.'s argument lacks merit.

not a school? Second, could a non-student at the school have brought the same claim?" *Id.* (citing *Fry*, 137 S. Ct. at 747).

Looking at S.B.'s proposed Second Amended Complaint, the answer to both hypothetical questions is "no." The Complaint alleges that S.B. was deprived of unspecified accommodations due to her autism and that Nick and Rowell failed to use common sense tactics to calm S.B. during the two incidents. Thus, as the district court correctly noted: "[T]he gist of plaintiff's failure-to-accommodate allegations are that JPSB failed to either implement or enforce a protocol for de-escalation, in situations where faculty or staff were dealing with an autistic student who acted out in the course of instruction."

Under these facts, S.B. would not be entitled to a claim for failure to provide reasonable accommodations in a public theater or library, as these establishments are not obligated to provide a trained and supervised aide or teacher to accommodate a learning disability. *See Heston v. Austin Indep. Sch. Dist.*, 816 F. App'x 977, 980 (5th Cir. 2020). Similarly, a visitor to a school would not have a claim under the ADA or Rehabilitation Act for the same reason. *Id.* Consequently, the crux of the complaint lies within the purview of the IDEA. So S.B.'s Complaint is subject to the IDEA's exhaustion requirement.

S.B. argues that exhaustion would be futile because hearing officers in Louisiana have no authority over anything other than IDEA assertions, and IDEA proceedings cannot remedy physical injuries or simple discrimination. However, this argument is unpersuasive. Exhaustion under IDEA refers to "relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers." *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 648 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2803 (2020). The preference is to solve disputes by providing the student with their promised education, not by awarding damages years after

the problem arises in the classroom. *See id.* Therefore, S.B. has not demonstrated that seeking such remedies would have been futile.

As exhaustion was necessary in this case and has not been completed, we affirm the decision of the district court dismissing the action without prejudice.

## IV.

For the above reasons, the judgment of the district court is AFFIRMED.