# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2023

Lyle W. Cayce
Clerk

—————————

No. 22-30435

—————————

United States of America,

*Plaintiff—Appellant*,

*versus*

Kentrell D. Gaulden,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CR-14-1

———————————————————————

Before Jones, Willett, and Douglas, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Kentrell Gaulden, a rapper professionally called YoungBoy Never Broke Again, or NBA YoungBoy, succeeded in suppressing a video that showed him, a felon, violating federal gun laws. The government has appealed, arguing that he had neither a protected property interest in video footage filmed by a third party nor a reasonable expectation of privacy therein. We agree with the government and therefore REVERSE the district court's contrary judgment.

No. 22-30435

## I.

Gaulden's company, Big38Enterprise LLC, hired Marvin Ramsey to follow Gaulden around to film his everyday life.  Gaulden often requested that Ramsey share portions of this "B-Roll" footage with Gaulden's record label, Atlantic Records, for use in music videos.  More often, Gaulden edited and uploaded portions of the footage directly to social media.  Either way, the footage was used according to Gaulden's preferences for promotional purposes.  Most of the footage remained unshared.

On September 28, 2020, an anonymous 9-1-1 caller reported several men with "Uzis" and other guns walking down a residential street in Baton Rouge, Louisiana.  This was the second such report in two days.  Police arrived at the scene and detained Gaulden, Ramsey, and others.  The officers recovered a camera containing a memory card from Ramsey's person and several firearms from the surrounding underbrush.

After obtaining a warrant, officers viewed video footage stored on Ramsey's memory card.[1]  The footage showed Gaulden holding a Glock pistol and gesturing with a Masterpiece Arms pistol equipped with a vertical foregrip.  Gaulden is a felon.

Based in part on that footage, a federal grand jury indicted Gaulden for possessing firearms following a felony conviction, 28 U.S.C. § 922(g)(1), and for possessing a firearm that was not registered to him under the National Firearms Act, 26 U.S.C. § 5861(d).

Gaulden moved to suppress the video footage.  The government argued that Gaulden could not suppress the video footage because he lacked

---

[1] Officers obtained a second warrant to search a camera bag located in a nearby vehicle.  It contained additional memory cards that matched Ramsey's camera.

a Fourth Amendment interest in it. Three witnesses testified in support of Gaulden. A bank manager attested to a payment from Big38Enterprise LLC to Ramsey, and two witnesses from Atlantic Records discussed Ramsey's employment as an around-the-clock videographer who recorded "lifestyle" footage for social media and music videos. Atlantic's Chairman noted that Gaulden "shoots a lot of stuff, and then he determines what he wants to go up," but the unused footage is not reviewed by Atlantic. Ramsey did not testify.

The district court reasoned that Gaulden had a protectible Fourth Amendment interest in the videos on the memory card although he lacked a Fourth Amendment interest in the memory card itself. The court also found the warrant fatally defective. Accordingly, the court suppressed the footage of Gaulden in possession of the firearms. The district court denied the government's motion for reconsideration. The government appeals, raising only the antecedent question of Gaulden's Fourth Amendment interest in the footage.

## II.

We review the district court's legal determinations regarding a motion to suppress de novo and its factual findings for clear error. *United States v. Beaudion*, 979 F.3d 1092, 1097 (5th Cir. 2020). We view the record evidence in the light most favorable to Gaulden as the prevailing party, *United States v. Massi*, 761 F.3d 512, 519–20 (5th Cir. 2014), but Gaulden bears the burden to prove his entitlement to the remedy of suppression, *Rakas v. Illinois*, 439 U.S. 128, 130, 132 n.1, 99 S. Ct. 421, 424, 424 n.1 (1978).

The Fourth Amendment protects "[t]he right of the people to be secure in *their* persons, houses, papers, and effects[] against unreasonable searches and seizures." U.S. Const. amend. IV (emphasis added). "[T]hose invoking the Amendment can vindicate only their *personal* security against

unreasonable searches and seizures," not "security in the property of someone else." *Beaudion*, 979 F.3d at 1096–97 (emphasis in original).[2]

Gaulden's right to Fourth Amendment protection turns on whether he has a constitutionally protected property interest or a judicially conferred reasonable expectation of privacy in the place or thing searched or seized. *See Beaudion*, 979 F.3d at 1097 (citing *United States v. Jones*, 565 U.S. 400, 407, 132 S. Ct. 945, 951 (2012)). In particular, the Supreme Court holds that a constitutional reasonable expectation of privacy "must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas*, 439 U.S. at 144 n.12, 99 S. Ct. 430 n.12. Further, as the Court put it more recently, these two concepts are often linked, and "this general property-based concept guides resolution . . . ." *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018); *see also Florida v. Jardines*, 569 U.S. 1, 11, 133 S. Ct. 1409, 1417 (2013). Consistent with the Supreme Court precedent, this court's decisions analyze searches of personal property by considering "whether [the defendant] had a possessory interest in the personal property searched, whether he exhibited a subjective expectation of privacy in that personal property, and whether he took normal precautions to maintain that expectation of privacy." *United States v. Runyan*, 275 F.3d 449, 457–58 (5th Cir. 2001).

It is common ground among the parties, the district court, and this court that Gaulden neither owned nor possessed the camera or the physical

---

[2] Courts have referred to this requirement as Fourth Amendment "standing." But that label is a misnomer because this inquiry is a merits question that has nothing to do with this court's Article III jurisdiction. *See Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018) (Fourth Amendment standing "is not distinct from the merits and is more properly subsumed under substantive Fourth Amendment doctrine." (quotation omitted)).

memory card, both of which belonged to his cameraman, Ramsey. Gaulden, however, echoes the district court's determination that because none of the footage in question had been shared publicly or turned over to Atlantic Records, and Gaulden exerted a right to determine which media footage could be so displayed, there was a strong suggestion that he "retained a property interest" in the disputed video footage. We disagree.

To the extent Gaulden can have a distinct property interest in the video footage, he never proved that he acquired such a right. Gaulden himself did not testify.[3] There is no written contract giving Gaulden ownership of the video footage. And in any event, Gaulden's company, not Gaulden himself, paid for Ramsey's photography services. Under Louisiana law, there is a clear distinction between a business entity, here Big38Enterprise LLC, and even a sole owner like Gaulden. What the entity owns is not tantamount to the individual's ownership. *See* La. Stat. Ann. § 12:1329. Even were that not true, a payment from Gaulden's company for videography *services* does not establish a property interest in the videographer's *product*. Ramsey was not Gaulden's or his company's employee. Contrary to the district court's reasoning, there is no appropriate analogy to commissioned work under the Copyright Act. *See* 17 U.S.C. § 201(b). Nor does Gaulden argue his relationship with Ramsey was a bailment,[4] much less does he assert any other property-based "concept[]" of

---

[3] His testimony in a motion to suppress would have been without prejudice to his later invoking the Fifth Amendment at trial. *Simmons v. United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 976 (1968).

[4] If anything, the evidence actually shows the opposite to be true. Gaulden did not put his videos on Ramsey's memory card to hold for a certain purpose. *See* La. Civ. Code Ann. arts. 2985–3034 (mandate and deposit); *see generally* Michael H. Rubin, *Bailment and Deposit in Louisiana*, 35 La. L. Rev. 825 (1975).

"personal property law." *Rakas, supra.* Consequently, Gaulden has not established a property interest in the incriminating video footage.

Next, Gaulden fails to show he has a constitutionally protected reasonable expectation of privacy.[5] As previously explained, this court has considered both a defendant's subjective expectation of privacy and the precautions taken to protect that expectation. *See Runyan,* 275 F.3d at 457–58. The district court inferred Gaulden's subjective claim of privacy from the fact that he directed Ramsey as to which portions of video footage to make public, and from its misplaced analogy to the Copyright Act. Taken alone, Gaulden's ability to direct Ramsey in regard to footage on Ramsey's media cards fails to prove any "reasonable" expectation of privacy. Whether the memory card contained videos of Gaulden's private life, or the videos themselves were a conceptually distinct property unit in which he had a privacy interest, the fact remains that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *See Carpenter v. United States*, 138 S. Ct. 2206, 2216 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 744–45, 99 S. Ct. 2577, 2582 (1979)). That remains the case "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *United States v. Miller*, 425 U.S. 435, 443, 96 S. Ct. 1619, 1624 (1976) (rejecting Fourth Amendment protection for account information held by a bank). Here, there is no evidence from Gaulden or Ramsey affirming Gaulden's intent to keep private the video footage, especially footage showing him and several confederates posing in a public street while bearing firearms.

---

[5] The privacy inquiry "supplements . . . the traditional property-based" inquiry. *Byrd*, 138 S. Ct. at 1526 (internal quotation marks and citation omitted).

Far from demonstrating any attempt to keep the personal video footage private, Gaulden undertook an "affirmative act" by giving a third-party permission to videotape him *and* retain the recordings. *Carpenter*, 138 S. Ct. at 2220. Indeed, Gaulden sought out a videographer for the purpose of videotaping his everyday life to promote himself and his music. He "assume[d] the risk" that the third party creating the recordings could divulge the recordings. *Id.* (internal quotation marks and citation omitted). Gaulden had to know that Ramsey or anyone else involved in the editing and fashioning of his videos to upload to YouTube or the record company would be witnesses to footage of his personal life. Yet the record shows no precautions taken by Gaulden to control third-party access or to control how Ramsey used or stored the memory cards. Further, that Ramsey and Atlantic Records acquiesced in Gaulden's preferences on which portions of the footage to release publicly does not demonstrate that Gaulden had the authority to keep any portion of the videos private. And even if Ramsey tried, on his own or at Gaulden's request, to ensure the privacy of the memory card and its contents, Gaulden still had no reasonable expectation of privacy because he neither owned nor possessed nor controlled it. *Byrd*, 138 S. Ct. at 1528 ("[P]assengers do not have an expectation of privacy in an automobile glove compartment."); *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S. Ct. 2556, 2561 (1980) (There is no "legitimate expectation of privacy in [a friend's] purse."). In short, there is no evidence that Gaulden took precautions to maintain the privacy of the video footage.

Gaulden points to *Byrd*, 138 S. Ct. 1518, and *Minnesota v. Olson*, 495 U.S. 91, 110 S. Ct. 1684 (1990), for the proposition that it is "not necessary to prove ownership in order to be able to assert a privacy interest." Those cases, though, do not help him. In *Byrd*, the Court held that someone in possession of a rental car retains a reasonable expectation of privacy despite not being listed on the rental agreement because even "an

unauthorized driver in sole possession of a rental car would be permitted to exclude . . . a carjacker." *Byrd*, 138 S. Ct. at 1528–29. The same goes for the overnight houseguests who may exclude thieves. The *Olson* Court held that overnight houseguests "are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household." 495 U.S. at 99, 110 S. Ct. at 1689. Those cases still require Gaulden to show *he* owned, possessed, controlled, or had a right to exclude others from the memory card and its contents. These cases might support a suppression motion by Gaulden if he possessed the memory card, but they do not demonstrate Gaulden's legitimate expectation of privacy in videos on a memory card controlled by Ramsey.

More closely on point, in contrast, is this court's recent decision in *Beaudion,* which held that a defendant could claim no constitutional privacy interest in GPS coordinates that located a cellphone he purchased for his girlfriend's use, to which he knew the password, on which he made phone calls occasionally, and which he used to make intimate videos of the couple. This court concluded that, "[n]o matter whether Beaudion actually expected privacy in the phone, we cannot say his expectation of privacy would be reasonable." *Beaudion,* 979 F.3d at 1099.

In all, Gaulden had no constitutionally protected property interest or reasonable expectation of privacy in the footage on a memory card belonging to a videographer his company hired for promotional purposes. The district court erred in suppressing the video. We REVERSE.

No. 22-30435

Dana M. Douglas, *Circuit Judge*, concurring in the judgment:

This is a novel case. In my opinion, Gaulden's claim to a privacy interest in the video footage that is protected by the Fourth Amendment fails for lack of evidentiary support. Gaulden presented testimony at the suppression hearing from two witnesses who described the industrywide practice of music artists employing videographers; Gaulden's general practice of employing videographers to capture "behind-the-scenes" or "lifestyle" footage; and his relationship with his record company, Atlantic Records, regarding his authority to control whether that footage is uploaded directly to social media or shared with Atlantic. Critically, however, Gaulden did not present sufficient evidence of the terms of his relationship with Ramsey. Evidence that Gaulden's LLC made one $5,000 "camera man payment" to Ramsey two months prior to the day in question, without more, does not establish that Gaulden had a reasonable expectation of privacy in Ramsey's video footage. Had Gaulden presented evidence of his relationship with Ramsey—contractual or otherwise—to support his assertions that he had authority to control the use of Ramsey's video footage and to exclude others from it, I would affirm. Because he did not, I concur in the judgment. I write separately, however, to address the majority's emphasis on property-law concepts and its application of the third-party doctrine.

For Gaulden to establish that he had a privacy interest in the video footage that is protected by the Fourth Amendment, he must show a "subjective expectation of privacy that society considers objectively reasonable." *United States v. Runyan*, 275 F.3d 449, 457 (5th Cir. 2001). "Although the Court has not set forth a single metric or exhaustive list of considerations to resolve the circumstances in which a person can be said to have a reasonable expectation of privacy, it has explained that '[l]egitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law

*or to understandings that are recognized and permitted by society.*'" *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018) (quoting *Rakas v. Illinois*, 439 U.S. 128, 144 n.12 (1978) (emphasis added). *Rakas* thus recognized two distinct "source[s]" or "concepts" that could give rise to a reasonable expectation of privacy protected by the Fourth Amendment: (1) property law; and (2) societal understandings. *See id.* The majority states that "these two concepts are often linked" but then quotes *Byrd* as suggesting that "this general property-based concept guides resolution . . . ." *See Byrd*, 138 S. Ct. at 1527. To the extent that the majority is suggesting that property law concepts generally take precedence in the analysis, I disagree.

*Byrd* itself makes clear that the Court was referring to *that specific case*, not describing a general rule: "This general property-based concept guides resolution *of this case.*" *Id.* (emphasis added); *see also id.* ("The two concepts *in cases like this one* are often linked.") (emphasis added). *Byrd* involved "an unauthorized driver in sole possession of a rental car"—a factual scenario that is distinguishable from Gaulden's case (thus, while Gaulden correctly cites *Byrd* for the rule of law that ownership is not necessary to asserting a privacy interest, the case is otherwise of limited utility here). *Id.* at 1528. Given the two sources of protectible privacy interests identified in *Rakas*, the case-specific language of *Byrd*, and the unique facts of this case, I disagree with the majority that "property-based concept[s] guide[ ] resolution" here. I see Gaulden's asserted privacy interest as sounding more in "understandings that are recognized and permitted by society" rather than property law concepts. In analyzing Gaulden's privacy interest, property law concepts may be "instructive," but they do not guide or take precedence in the analysis and do not limit what may otherwise be a legitimate privacy interest "recognized and permitted by society." *See id.* at 1526–27.

To determine whether a privacy interest is protected by the Fourth Amendment, our precedent provides for a factor analysis that "shift[s] in

No. 22-30435

emphasis" based on each case's "factual situation." *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 213 n.11 (5th Cir. 2001); *see also Runyan*, 275 F.3d at 457 (explaining that factor analysis appropriate to one type of search "cannot necessarily be applied to other types of searches without modification"). In *United States v. Cardoza-Hinojosa*, we applied five factors to determine whether a defendant had a legitimate privacy interest in real property and explained that "[w]hile no one of these factors is necessarily decisive, together they represent the concerns that should be addressed in determining whether a defendant has standing to object to a search under the Fourth Amendment." 140 F.3d 610, 616 (5th Cir. 1998). In *Runyan*, which "involve[d] a search of personal property rather than real property," we modified the analysis to focus on the three "most directly applicable" factors. 275 F.3d at 457–58 (citing *Kee*, 247 F.3d at 212–13). The majority applies the three *Runyan* factors, considering "[1] whether [the defendant] had a possessory interest in the personal property searched, [2] whether he exhibited a subjective expectation of privacy in that personal property, and [3] whether he took normal precautions to maintain that expectation of privacy." *Id.* at 458.

I agree that the factor analysis described in *Cardoza-Hinojosa*, *Kee*, and *Runyan* provides the applicable legal framework but differ with the majority's application of it to this case. Perhaps guided by its notion that "general property-based concept[s] guide[ ] resolution[ ]," the majority focuses too intently on issues of ownership and possession instead of considering how the factors apply to Gaulden's assertion of a relationship with Ramsey wherein Gaulden retained authority to control the footage, notwithstanding that his LLC paid for the video and that Ramsey had possession of it at the time of the search.

First, that Gaulden's LLC—and not Gaulden personally—made the "camera man payment" to Ramsey does not preclude Gaulden from having

11

a Fourth Amendment interest in the video footage. In *United States v. Britt*, we said that even a sole shareholder of a corporation cannot automatically challenge the search or seizure of corporate property "simply because he is a corporate officer." 508 F.2d 1052, 1055 (5th Cir. 1975). At the same time, *Britt* explained that there was no rule preventing a corporate officer from having a Fourth Amendment interest in corporate property "under certain circumstances" if there was "a demonstrated nexus" between the search and the defendant. *Id.* at 1055–56; *see also Henzel v. United States*, 296 F.2d 650 (5th Cir. 1961). Post-*Rakas*, we reaffirmed *Britt* in *Williams v. Kunze. See* 806 F.2d 594, 599 (5th Cir. 1986) (explaining that "[a]n individual's status as the sole shareholder of a corporation is not always sufficient" but that "the shareholder, officer or employee" can challenge the search of corporate property if he or she "can demonstrate a legitimate and reasonable expectation of privacy in the records seized") (citing *Britt*, 508 F.2d at 1055) (internal citation omitted).

To be clear, I do not read the majority opinion as holding to the contrary or to be inconsistent with *Britt* and *Williams*. The majority discusses Gaulden's LLC when analyzing whether Gaulden personally had a Fourth Amendment interest stemming from a "distinct property interest" in the footage. Because one can have a Fourth Amendment privacy interest in something that one does not own, an ownership analysis is of course not dispositive of the Fourth Amendment inquiry. Here, as mentioned above, I see Gaulden's asserted privacy interest in the video footage as based in "understandings that are recognized and permitted by society," rather than stemming from a property interest. *See Byrd*, 138 S. Ct. at 1526–27.

Second, the fact that Ramsey may have owned and possessed the camera and memory card on which the video was stored at the time of the search does not alone negate Gaulden's claim to a privacy interest in the footage. The majority appears to hold otherwise, citing to *Byrd* and *Rawlings v. Kentucky*,

448 U.S. 98 (1980). I read neither case as preventing Gaulden from having a Fourth Amendment interest in the video footage—had he put forth sufficient evidence.

The majority quotes *Byrd* for the proposition that "passengers do not have an expectation of privacy in an automobile glove compartment." *Byrd*, 138 S. Ct. at 1528.[1] But *Byrd* did not endorse such a bright-line rule; rather, the quoted material from *Byrd* is part of a description of "the Government's position" in that case, which the Court explicitly rejected as a "misreading of *Rakas*." *Id.* The Court went on to explain that "*Rakas* did not hold that passengers cannot have an expectation of privacy in automobiles. To the contrary, the Court disclaimed any intent to hold 'that a passenger lawfully in an automobile may not invoke the exclusionary rule and challenge a search of that vehicle unless he happens to own or have a possessory interest in it.'" *Id.* (quoting *Rakas*, 439 U.S. at 150 n.17).[2] Thus, Gaulden's lack of ownership or possession of the memory card that contained the video footage does not prevent him from challenging the search of the video if he can otherwise establish a reasonable expectation of privacy in the footage. *Cf. United States v. Finley*, 477 F.3d 250, 254, 259 (5th Cir. 2007), *abrogated on other grounds by Riley v. California*, 573 U.S. 373 (2014) (holding that an employee had a reasonable expectation of privacy in the call records and text messages contained on a cell phone owned by his employer because he "had a right to

---

[1] By analogy, presumably Gaulden is the passenger, Ramsey is the owner of the automobile, and the memory card containing the video is the glove compartment.

[2] Rather than holding that passengers do not have an expectation of privacy in automobiles, *Rakas* "instead rejected the argument that legitimate presence alone was sufficient to assert a Fourth Amendment interest, which was fatal to the petitioners' case there because they had 'claimed only that they were "legitimately on [the] premises" and did not claim that they had any legitimate expectation of privacy in the areas of the car which were searched.'" *Byrd*, 138 S. Ct. at 1528 (quoting *Rakas*, 439 U.S. at 150 n.17) (alteration in original).

exclude others from using the phone" and explaining that "a property interest in the item searched is only one factor in the analysis, and lack thereof is not dispositive").

This conclusion is consistent with *Rawlings*. The majority cites *Rawlings* as holding that there is "no legitimate expectation of privacy in [a friend's] purse." 448 U.S. at 104. True, that is what *Rawlings* concluded after considering the relevant facts in that case: (1) Rawlings had known the purse's owner "for only a few days"; (2) he "had never sought or received access to her purse" prior to suddenly depositing a large quantity of drugs in it immediately before the police arrived; (3) he did not "have any right to exclude other persons from access to [the] purse"; (4) by contrast, another person, described as "a longtime acquaintance and frequent companion" of the purse's owner, had "free access" to it and "had rummaged through its contents" on the morning in question; and (5) surprisingly, Rawlings himself admitted that he had no subjective expectation of privacy in the purse. *Id.* at 104–05. Based on these facts, the Court in *Rawlings* easily concluded that the "precipitous nature of the transaction hardly supports a reasonable inference that petitioner took normal precautions to maintain his privacy," but the Court did not categorically hold that one could never have a legitimate expectation of privacy in another's purse. *Id.* at 105.

Here, contrasted with the facts of *Rawlings*, Gaulden is asserting a "transaction" with Ramsey of a wholly different "nature": (1) rather than being a recent acquaintance, Gaulden claims that he paid Ramsey to be his cameraman; (2) he claims that he has the right to control the use of Ramsey's video footage of him and to exclude others from it; and (3) he claims a subjective expectation of privacy in the video footage based on his arrangement with Ramsey.

The majority rejects Gaulden's arguments and concludes that he had no subjective expectation of privacy in the video footage and failed to take normal precautions to protect his privacy because "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," *see Carpenter v. United States*, 138 S. Ct. 2206, 2216 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979)), "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *United States v. Miller*, 425 U.S. 435, 443 (1976)). This is the so-called "third-party doctrine." *Carpenter*, 138 S. Ct. at 2216. While I concur in the judgment, I disagree with rejecting Gaulden's claim on this basis.

Per the third-party doctrine, when a person "shares [information] with others . . . the Government is *typically* free to obtain such information from the recipient without triggering Fourth Amendment protections." *Id.* (emphasis added). More recently, however, the Court warned against "mechanically applying" the doctrine. 138 S. Ct. at 2219. *Carpenter* clarified that while "an individual has a reduced expectation of privacy in information knowingly shared with another . . . the fact of 'diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely.'" *Id.* (quoting *Riley*, 573 U.S. at 392). The Court explained that "*Smith* and *Miller*, after all, did not rely solely on the act of sharing. Instead, they considered 'the nature of the particular documents sought' to determine whether 'there is a legitimate "expectation of privacy" concerning their contents.'" *Id.* (quoting *Miller*, 425 U.S. at 442).

The third-party doctrine is a poor fit for the facts of this case, as a comparison with *Miller* and *Smith* demonstrates. In *Miller*, the Court held that a bank depositor had no reasonable expectation of privacy in the contents of checks, financial statements, and deposit slips maintained by his bank, as the checks were "not confidential communications but negotiable instruments to be

used in commercial transactions" and the bank records "contain[ed] only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." 425 U.S. at 442. Similarly, in *Smith*, the Court held that a telephone user lacked a reasonable expectation of privacy in the phone numbers that he dialed because he "voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business." *Id.* at 744. The Court "doubt[ed] that people in general entertain any actual expectation of privacy in the numbers they dial," as it is common knowledge that users must convey numbers to the telephone company to place a call, that the phone company has equipment to records the numbers, and that the numbers are tracked for billing and other purposes in the normal course of business. *Id.* at 742–43.

In contrast, Gaulden is claiming a privacy interest in video footage of himself that his LLC paid to have recorded, including "behind-the-scenes" or "lifestyle" footage that he asserts is personal in nature, and, importantly, he is also claiming that he has the authority to control how that footage is used, including whether it is shared with his record company, uploaded to social media, or otherwise released publicly. This arrangement is not comparable to a person making bank deposits or dialing a phone number and thereby conveying information to a bank or phone provider in the normal course of business to complete a routine transaction, both because the video footage at issue here contains personal information of a different nature than that contained in the business records at issue in *Miller* and *Smith*, *see Carpenter*, 138 S. Ct. at 2219, and because the bank depositor and phone customer retain no authority to control the use of their information once it is conveyed to the business. Thus, the mere fact that the video was shared with or accessible to Ramsey does not by itself negate Gaulden's claim to Fourth Amendment protection, and I would not "mechanically apply[ ] the third-party doctrine"

No. 22-30435

to hold to the contrary. *Id.* at 2219; *see also Finley*, 477 F.3d at 259 ("That [the defendant's] employer could have read the text messages once he returned the phone does not imply that a person in [his] position should not have reasonably expected to be free from intrusion from both the government and the general public.")

Nevertheless, while I have concerns with the majority's emphasis on property law concepts and disagree with its application of the third-party doctrine, I concur in the judgment because, while Gaulden argues that he had an arrangement with Ramsey that conferred a legitimate privacy interest in the video, he did not carry his evidentiary burden to support that argument. Neither Gaulden, nor Ramsey, nor any other witness testified to the specifics of the arrangement between Gaulden and Ramsey; evidence showing that Gaulden's LLC made a "camera man payment" to Ramsey, without more, is not enough to establish that Gaulden had a reasonable expectation of privacy in the footage; and testimony concerning Gaulden's relationship with Atlantic Records likewise did not establish the terms of Gaulden's relationship with Ramsey.