# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2026

Lyle W. Cayce
Clerk

_____

No. 25-10954

_____

E'Mann Comichi,

*Plaintiff—Appellant*,

*versus*

Officer Ingrid A. Pethel; Officer Brian S. Lord; Officer Wesley R. Hamilton; Detective William M. Norwood,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:25-CV-512

_____

Before Elrod, *Chief Judge*, and Higginbotham and Graves, *Circuit Judges*.

Per Curiam:[*]

Plaintiff–Appellant E'Mann Comichi attempted to stop the towing of his nephew's illegally parked Penske rental truck in Euless, Texas. Three police officers arrived at the scene and, after a lengthy discussion, arrested him. Comichi alleges numerous claims against the police officers and a

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

detective under 42 U.S.C. § 1983, including unlawful search and seizure, false arrest, failure to intervene, and malicious prosecution. The district court granted Defendants–Appellees' motion to dismiss, dismissing all claims with prejudice on qualified immunity grounds.

We AFFIRM the district court's dismissal of Comichi's unlawful-search and unlawful-seizure claims against Officers Pethel, Lord, and Hamilton. We REVERSE only as to its dismissal of his false-arrest claim against Officer Pethel. Based on this reversal, we must also VACATE its dismissal of Comichi's failure-to-intervene and malicious-prosecution claims against Officers Lord and Hamilton, which the district court has not yet addressed on the merits, for consideration on the merits in the first instance.

I

A

Sometime in September 2024, Comichi's nephew parked a Penske rental truck in a public parking lot near the Euless Dog Park before leaving town for a vacation. Comichi's nephew was the only renter listed on the truck's rental agreement, but Comichi had paid for the rental.

On September 16, 2024, police "red tagged" the truck as illegally parked. The red tag ordered the vehicle moved by September 18. On September 22, Officers Ingrid Pethel and Brian Lord observed the truck still parked in the parking lot. Officer Pethel called a towing company to tow the vehicle.

On September 22, 2024, Comichi was walking his nephew's dog near the dog park when he observed the Penske truck in the road, positioned behind the tow truck. Comichi ran to the truck and sat in the driver's seat to prevent the tow truck operator from completing the tow. The operator

informed Comichi that he would not release the truck unless Comichi paid a $350 "drop fee."

Comichi called the police. Officer Wesley Hamilton arrived, and Comichi informed him that, because the Penske truck was not completely hooked up to the tow truck, he was entitled to reclaim it. Officer Hamilton told Comichi that, if the Penske truck was already hooked up to the tow truck, his act of entering the truck and preventing the tow was "obstructing."

The tow truck operator asked Comichi to roll the driver window up so that he could show him the red tag. Officer Hamilton then asked Comichi to step out of the truck so that he could see the language on the red tag, and Comichi began to raise his voice at Officer Hamilton and object that this was not a criminal matter. Officer Hamilton told Comichi, "Look, but now you're obstructing the police. This [the red tag] is a police notice." Comichi protested but ultimately complied, stepping out of the truck and reading the information on the red tag aloud.

Comichi fervently continued to assert that the truck had not been fully hooked up to the tow truck. Officer Hamilton told Comichi to "chill out," and Comichi apologized. The tow truck operator then stated: "He's right, I was not 100% connected to it, I had moved [the Penske truck] from its spot to connect to it, and he got me as I was backing up." The operator again offered for Comichi to pay the drop fee to reclaim the truck, and Comichi refused. The operator explained that he had already picked up the truck from its original parked location and that the tow was already in progress.

During this interaction, Officer Hamilton radioed for other officers to "come down here." Officers Pethel and Lord arrived at the scene. Officer Pethel asked Comichi to move out of the roadway, and the group moved toward the side of the road.

Officer Pethel then informed Comichi that she would pat him down to check for weapons. She took his arm and moved him to the sidewalk, instructing him on how to stand for the pat-down, and he complied. Comichi alleges that the pat-down included touching his genitals and searching his pockets. Officers Lord and Hamilton watched Officer Pethel pat Comichi down.

After the pat-down, Officer Pethel asked Comichi for his name several times while Comichi explained his view of the incident to her. He declined to give his name but continued speaking with her. Officer Pethel offered Comichi the option to pay a drop fee to reclaim the truck, and he declined. After explaining that the truck had been abandoned pursuant to the relevant city ordinance, Officer Pethel informed Comichi that the truck would be towed. Comichi then acquiesced and began to walk away.

Officer Pethel asked Comichi to give her his name before he left. Comichi again refused to identify himself. Officer Pethel replied: "I spoke with you, and you were detained, so you need to give me your name. And I'm not going to make it super difficult for you; I'm making it very easy for you. You are going to give me your name, or else you're under arrest." Comichi stated that he would let the officers arrest him, and Officer Pethel responded: "No, how about you make it much simpler and just give me your name so that I don't have to take you to jail for this." Comichi said nothing and placed his hands behind his back to be handcuffed.

Officer Pethel again asked for his name, but Comichi did not respond. She handcuffed Comichi and stated that he was under arrest. She escorted him to her vehicle, searched his person, and removed his personal belongings. After the squad cars departed, the tow truck operator towed the Penske truck pursuant to officer instruction.

No. 25-10954

Officer Pethel transported Comichi to the Hurst Jail, where he continued to refuse to identify himself. He was charged with Interference with Public Duties and Failure to Identify. Two days later, while Comichi was still in custody, Detective William Norwood reviewed the incident and requested to drop the Interference with Public Duties charge. Comichi spent forty-five hours at the jail before his release. The Failure to Identify charge was later dropped.

## B

Comichi sued Officers Pethel, Lord, and Hamilton and Detective Norwood, the tow truck company, and the tow truck operator.[1] He alleges claims under 42 U.S.C. § 1983 for: (1) false arrest; (2) unlawful search; and (3) unlawful search and seizure incident to unlawful arrest; (4) failure to intervene; (5) unlawful seizure of the truck; and (6) malicious prosecution.[2]

Defendants–Appellees moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting qualified immunity. The district court granted the motion and dismissed all claims with prejudice. Comichi timely appealed.

## II

We review a "motion to dismiss granted on the basis of qualified immunity" *de novo*, "accepting all well-pleaded facts as true and drawing all inferences in favor of the plaintiff." *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 413 (5th Cir. 2021). We do not accept "[c]onclusory allegations,

---

[1] The tow truck company and tow truck operator originally were parties to this appeal. After oral argument, Comichi moved unopposed under Fed. R. App. P. 42(b) for partial dismissal of the appeal as to the claims against these two parties, and we granted the motion.

[2] Comichi attached Officers Lord and Hamilton's body camera video and a portion of the police report to the complaint.

unwarranted factual inferences, or legal conclusions" as true. *Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025) (alteration in original) (quoting *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024)). When the pleadings incorporate video evidence, as they do here, "the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Qualified immunity involves two inquiries: first, whether the officer violated a constitutional right; and second, whether that right "was 'clearly established' at the time of [the] alleged misconduct." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (alteration in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). When a defendant asserts qualified immunity, the burden shifts to the plaintiff to show that the defense does not apply. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law,' so we do not deny immunity unless 'existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (first quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986); and then quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

## III

Comichi's claims primarily concern his interactions with Officer Pethel, the arresting officer. We address these claims first and then turn to the claims involving the other Defendants–Appellees.

A

First, Comichi contends that Officer Pethel unlawfully searched him We disagree, concluding that Officer Pethel is entitled to qualified immunity on this claim.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may detain a person for investigative purposes if he or she has reasonable suspicion that criminal activity is afoot. *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014). Whether reasonable suspicion exists is an objective question that considers the totality of the circumstances. *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992). The officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the detention. *Terry*, 392 U.S. at 21. "Officers develop reasonable suspicion through commonsense judgments and inferences about human behavior." *United States v. Larremore*, 150 F.4th 463, 474 (5th Cir. 2025) (citing *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)). "Observations capable of innocent explanation when considered alone might rise to the level of reasonable suspicion in the aggregate." *United States v. McKinney*, 980 F.3d 485, 491 (5th Cir. 2020) (citing *United States v. Arvizu*, 534 U.S. 266, 277–78 (2002)).

If an officer reasonably believes that an individual is "armed and presently dangerous to the officer[ ] or to others, [he or she] may conduct a limited protective search for concealed weapons"—called a "frisk." *United States v. Darrell*, 945 F.3d 929, 932 (5th Cir. 2019) (quoting *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc)). "[I]n order to ensure their safety during the stop, police may frisk the subject for weapons that they reasonably suspect he may carry." *United States v. Thomas*, 997 F.3d 603, 614 (5th Cir. 2021) (quoting *United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010)). Officers may take steps that are "reasonably necessary to protect

their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). The standard is whether a reasonably prudent officer could believe, based on specific and articulable facts, that his or her actions were appropriate. *See Rideau*, 969 F.2d at 1574.

Comichi has failed to plead facts demonstrating that he was unlawfully searched during Officer Pethel's pat-down. Officer Pethel arrived at the scene after Officer Hamilton called for backup. As she approached, Comichi, Officer Hamilton, and the tow truck operator were engaged in an argument in the middle of the road. Comichi spoke in a raised voice. Officer Pethel instructed Comichi to move to the side of the road for his safety, gesturing for him to walk to the back of the Penske truck. Comichi disregarded her direction and walked in the opposite direction to stand between the tow truck and the Penske truck. Officer Pethel then told Comichi to step fully onto the sidewalk. Comichi followed her directions, but he protested and maintained a heated tone while moving back and forth.

In light of these facts, we cannot say Officer Pethel acted unreasonably in frisking Comichi's outer clothing for weapons out of concern for officer safety. *See United States v. Ducksworth*, 168 F.4th 764, 770 (5th Cir. 2026) (collecting cases holding that nervous, erratic behavior created reasonable suspicion for an officer to conduct a pat-down). Comichi has therefore failed to meet his prong-one burden of pleading facts indicating that Officer Pethel's pat-down lacked reasonable suspicion and thereby violated a constitutional right. *See Morrow*, 917 F.3d at 874. We thus conclude that Officer Pethel is entitled to qualified immunity on this claim.

B

Comichi asserts that Officer Pethel violated his Fourth Amendment rights when she arrested him without probable cause. We agree, concluding

that Officer Pethel is not entitled to qualified immunity on Comichi's false-arrest claim.

To prevail on a false-arrest claim, "a plaintiff must show that he was arrested without probable cause." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). "[I]f a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). "If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (emphasis removed); *Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020) (explaining that an arrest is justified "by showing probable cause for any crime"). This is because false-arrest claims do not focus "on the validity of each individual charge" but rather "on the validity of the arrest." *Wells*, 45 F.3d at 95.

Thus, to determine whether Officer Pethel falsely arrested Comichi, we must consider whether she had probable cause for at least one of the charges against him: Failure to Identify and Interference with Public Duties. We consider each charge in turn, concluding that probable cause did not exist for either charge.

1

In Texas, "[a] person commits an offense if he intentionally refuses to give his name . . . to a peace officer *who has lawfully arrested the person* and requested the information." Tex. Penal Code § 38.02(a) (emphasis added). But we have long recognized that "police cannot *arrest* an individual

solely for refusing to provide identification." *Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017) (emphasis added); *Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("[R]efusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.").

Although Comichi alleges in his complaint that his arrest lacked probable cause, we need not take this legal conclusion as true. *See Santander*, 133 F.4th at 481. Nonetheless, the bodycam footage supports his allegations.

As shown in the bodycam footage, Officer Pethel arrived at the scene when Comichi was standing outside the truck in the street with Officer Hamilton and the tow truck operator. She directed Comichi to move to the side of the road, and he complied. Comichi described the situation to her, amidst which Officer Pethel repeatedly asked for his name, and he ignored her. Officer Pethel offered Comichi the option to pay a drop fee to reclaim the Penske truck, and he declined, prompting her to inform him that the truck would be towed.

Comichi turned to walk away. Officer Pethel then stated: "Let me get your name before you leave." Drawing inferences Comichi's favor, this statement suggests that Officer Pethel recognized that his detention had ended. Comichi responded that he would not give his name. Officer Pethel then escalated the encounter, saying: "I spoke with you, and you were detained, so you need to give me your name. And I'm not going to make it super difficult for you; I'm making it very easy for you. You are going to give me your name, or else you're under arrest." When Comichi still refused, saying he would not answer questions, she told him a third time: "How about you make it much simpler and just give me your name so that I don't have to take you to jail for this." When Comichi declined to respond, Officer Pethel handcuffed him and told him that he was under arrest.

No. 25-10954

Viewed in the light most favorable to Comichi, the bodycam footage shows that Officer Pethel arrested Comichi because he refused to identify himself—not because he was actively interfering with public duties. And based on the facts available to Officer Pethel at the scene, we are satisfied that no reasonable officer "could have concluded that there was probable cause" for a Failure to Identify charge. *Brown*, 243 F.3d at 190.

2

But because Comichi was also charged with Interference with Public Duties, we must ask whether probable cause existed for this charge, as well, in order to determine whether his arrest was valid.[3] *See Wells*, 45 F.3d at 95. Probable cause did not exist.

A person commits Interference with Public Duties when he "with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Tex. Penal Code § 38.15(a)(1). "[A] person's interference must consist of more than speech alone." *Voss*, 954 F.3d at 239. For example, we have found probable cause for Interference with Public Duties when a person fails to abide by officer instructions pertaining to physical conduct. *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017). But "'merely arguing with police officers about the propriety of their conduct' . . . does not constitute probable cause to arrest someone for interference." *Voss*, 954 F.3d at 239 (quoting *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007)).

_____

[3] The district court reasoned that, because Comichi had no legal right to interrupt the tow under the language of the relevant municipal ordinance, the officers had probable cause to arrest him for Interference with Public Duties. It assumed, without analyzing, that Comichi's "entering of the vehicle and subsequent actions" qualified as interruption, disruption, or interference under the statute.

No. 25-10954

Viewed in the light most favorable to Comichi, the bodycam footage shows that Comichi was not interfering with public duties at the time of his arrest. He did not fail to abide by officer instructions as to his physical conduct. *See Childers*, 848 F.3d at 415. He followed Officer Hamilton's instruction to get out of the Penske truck prior to Officer Pethel's arrival. And when Officer Pethel asked him to step out of the road, he did so readily. He then complied with Officer Pethel's instructions regarding how to stand during the pat-down and continued standing with the officers as they dialogued about the situation. He only began to walk away when he learned the truck would be towed and believed that the encounter had ended.

Comichi's only noncompliance was verbal noncompliance: arguing about the propriety of the tow and the officers' conduct and negotiating whether he should have to pay a drop fee. And the bodycam footage shows that Officer Pethel affirmatively engaged in mutual negotiation. Comichi's verbal noncompliance was insufficient to support a finding of probable cause for an Interference with Public Duties charge. *See Voss*, 954 F.3d at 239.

3

In sum: viewing the allegations in the complaint and the bodycam footage in the light most favorable to Comichi, Officer Pethel lacked probable cause to arrest Comichi for both Failure to Identify[4] and Interference with Public Duties. "[I]t is beyond question that [it is] a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause." *Freeman*, 483 F.3d at 411; *see Turner*, 848 F.3d at 695. Consequently,

---

[4] The district court reasoned that the officers had probable cause to charge Comichi with Failure to Identify because he refused to identify himself *after* he already had been arrested for Interference with Public Duties. This conclusion disregards the numerous facts that support Comichi's position and draws inferences in favor of the defendants, which the court may not do at the motion-to-dismiss stage. *See T.O.*, 2 F.4th at 413.

12

Comichi has met his burden of showing that Officer Pethel is not entitled to qualified immunity on his false-arrest claim. *See Kovacic*, 628 F.3d at 211. The district therefore court erred in dismissing this claim.

## C

Next, Comichi asserts that Officers Pethel, Lord, and Hamilton unlawfully seized the Penske truck, in violation of his Fourth Amendment rights. The district court did not err in dismissing this claim.

To state a claim under § 1983, a plaintiff "must allege that a defendant deprived [him] of a federal right and that the defendant acted under color of state or territorial law." *Degenhardt v. Bintliff*, 117 F.4th 747, 752 (5th Cir. 2024). Whether the plaintiff was deprived of a federal right depends in part on whether he has Fourth Amendment standing to bring his claim. *Byrd v. United States*, 584 U.S. 395, 410 (2018) ("The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest . . . before seeking relief" for an allegedly unconstitutional action.).

To have Fourth Amendment standing to challenge a search or seizure, a plaintiff must establish: (1) "an actual, subjective expectation of privacy with respect to the place being searched or items being seized"; and (2) that "that expectation of privacy is one which society would recognize as [objectively] reasonable." *United States v. Wise*, 877 F.3d 209, 218 (5th Cir. 2017) (alteration in original) (quoting *United States v. Riazco*, 91 F.3d 752, 754 (5th Cir. 1996)). He must also establish that he "had a possessory interest in the personal property" and that he "took normal precautions to maintain that expectation of privacy." *United States v. Gaulden*, 73 F.4th 390, 393 (5th Cir. 2023) (quoting *United States v. Runyan*, 275 F.3d 449, 457–58 (5th Cir. 2001)).

No. 25-10954

Comichi lacks Fourth Amendment standing to challenge the seizure of the Penske truck.  Although he is not listed on the rental agreement, Comichi alleges that his nephew expressly authorized him to access and use the truck and that he paid for the rental.  It is true, as Comichi asserts, that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." *Byrd*, 584 U.S. at 411.  But the truck had been red-tagged as abandoned several days before Officer Pethel ordered it towed.  Accordingly, even if Comichi had a possessory interest in the truck at the time of the incident, and even assuming that he therefore had some expectation of privacy with respect to the truck, he left the truck illegally parked long enough for it to be considered abandoned under municipal ordinance.  Thus, he has not plausibly pleaded facts indicating that he "took normal precautions to maintain an expectation of privacy" in the truck. *Gaulden*, 73 F.4th at 393.  He therefore has not established Fourth Amendment standing to bring his unlawful-seizure claim, and the district court did not err in dismissing it.

D

Last, Comichi contends that Officers Lord and Hamilton failed to intervene when Officer Pethel violated his constitutional rights.[5]  He also asserts malicious-prosecution claims against Officers Pethel, Lord, and Detective Norwood.

Because the district court dismissed the false-arrest and unlawful-search-and-seizure claims on which Comichi's failure-to-intervene and

---

[5] Having determined that Comichi has failed to sufficiently allege an unlawful-search claim, *see supra* § III(A), we address the officers' liability for failure to intervene only as to the false-arrest claim.

14

malicious-prosecution claims are predicated, it did not consider the merits of these two claims. We, on the other hand, have concluded that Comichi's false-arrest claim can proceed. *See supra* § III(B). Accordingly, we must consider how to dispose of these claims.

We are "a court of review, not first view." *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) (quoting *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249 n.7 (5th Cir. 2020)). It would therefore be improper to address the merits of these claims for the first time on appeal. *Cruson*, 954 F.3d at 249 n.7. We therefore vacate the district court's dismissal of these claims and remand for the court to consider them in the first instance.[6] We express no opinion as to whether these claims will survive a qualified-immunity challenge on remand.

IV

For the foregoing reasons, we AFFIRM the district court's dismissal of Comichi's unlawful-search and unlawful-seizure claims against Officers Pethel, Lord, and Hamilton. We REVERSE only as to its dismissal of his false-arrest claim against Officer Pethel. Based on this reversal, we also VACATE its dismissal of Comichi's failure-to-intervene and malicious-prosecution claims against Officers Lord and Hamilton for consideration on

---

[6] On remand, the district court should consider the malicious-prosecution claim in light of the Supreme Court's decision in *Chiaverini v. City of Napoleon*, 602 U.S. 556, 563 (2024) ("So if an invalid charge—say, one fabricated by police officers—causes a detention either to start or to continue, then the Fourth Amendment is violated. And that is so even when a valid charge has also been brought . . . . [T]he bringing of one valid charge in a criminal proceeding should not categorically preclude a claim based on the Fourth Amendment.").

No. 25-10954

the merits in the first instance.    We REMAND for proceedings not inconsistent with this opinion.